IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHRISTOPHER D. MYERS,       :
       Plaintiff        :
      v.          : Case No. 3:21-cv-69-KAP
KANSKY DELISMA,      :
       Defendant     :

<u>Memorandum Order</u>

A party moving for summary judgment bears the initial burden of pointing the district court to the basis in the record for its argument that there is no genuine issue of material fact. <u>Celotex Corporation v. Catrett</u>, 477 U.S. 317, 323 (1986). Where there is a factual dispute, all reasonable inferences must be drawn in favor of the nonmoving party, in this case the plaintiff. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). However, summary judgment is an integral part of managing civil litigation, and when a moving party makes a prima facie case that there is no genuine issue of material fact, Fed.R.Civ.P. 56 obliges the party opposing summary judgment to show by competent evidence that there is a genuine factual dispute, that is, that sufficient evidence exists so that a reasonable jury applying the relevant law could return a verdict for the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 252 (1986). Because no evidence exists that would permit a reasonable jury to find the defendant liable to the plaintiff, summary judgment is ordered for the defendant.

Christopher Myers, an inmate formerly at S.C.I. Somerset and now at S.C.I. Benner, filed a complaint in April 2021 claiming that Doctor Kansky Delisma, the medical director at Somerset, was deliberately indifferent to Myers' serious medical needs by failing to promptly schedule him for an orthopedic consultation and surgery after Myers allegedly slipped in his cell while shadow-boxing and "the bone below the right hand ring finger was broken in two" on November 10, 2019. According to the complaint, the emergency room physician told Myers he was "referred for consultation and surgery to the local orthopedic surgeon" as soon as the "swelling goes down." This alleged referral did not take place, and in February 2020 a "specialist surgeon" allegedly told Myers that due to the delay in caring for Myers' hand it would never "return to normal" and this would have been avoided if he had had surgery shortly after his ER visit. Complaint ¶¶ 10-11, 22.

In a well-supported motion for summary judgment, to which Myers has made no reply (and no request for additional time to reply), Delisma asserts that both immediate and follow-up treatment was provided to Myers after Myers fractured the fourth

metacarpal in his right hand by punching a wall in his cell on November 10, 2019. The injury was promptly treated by splinting it at the local emergency room (where Delisma sent Myers on November 11, 2019, the day the injury was reported). The attending physician, Liana Ed L. Bittner, M.D., dictated the notes of the visit, Exhibit A, 276-78, using speech recognition software, but interpolating vowels and consonants where necessary it appears that Bittner diagnosed Myers as having a "comminuted displaced fracture of the midshaft of the fourth metacarpal with foreshortening and overriding of the bony fragments" and some moderate swelling of the back of the right hand. The radiologist (Amjad Safvi, M.D.) made the same diagnosis. Exhibit A, 271. Bittner splinted the fracture and returned Myers for transport back to prison in "stable and ambulatory condition." Bittner's four discharge instructions were to continue the splint until seen by David Girdany, an orthopedic surgeon in the borough of Somerset, "in the very near future," to apply ice to the swelling for the next 24 hours (Bittner noted that Myers reported being given ice at the prison), to take ibuprofen as needed for pain, and to use Bactrim for ten days for any skin infection. There is no mention of surgery, a need for surgery, or a referral for surgery. Bittner does not define "in the very near future" or explain why Girdany is specifically named.

When Myers' splint came off on or about December 20, 2019, he noticed a change in the appearance of his finger that he described as a half-inch displacement of the knuckle towards the wrist. Based on the comments of a nurse making rounds, at first Myers believed it might be a hematoma, and it was not until mid-January 2020 that a corrections officer allegedly told Myers that the "lump" in his finger was related to the fracture. Complaint ¶¶ 16-17. In mid-January 2020, therefore, Myers put in a slip for sick call about his hand and was promptly seen. As noted by Physician Assistant Ellis Kaufman, Exhibit A, 204, despite some difficulty in getting Myers to come to the triage room Myers received follow-up care at Somerset for his complaint in the form of an x-ray on January 22, 2020, which according to the reviewing radiologist (Scott Logan, M.D.) showed a subacute to chronic partially healed fracture. Exhibit A, 268.

On February 17, 2020, Myers went to sick call with a new complaint that he had numb and tingly sensations in his right hand. He was referred (or had already been scheduled after the January 22, 2020 x-ray) for an outside consult with Paul Rollins, M.D. At the consult on February 19, 2020, Rollins noted that Myers complained of some pain and discomfort on the back of (in medical parlance "along the dorsal aspect of") his hand and that Myers said he had trouble flexing and extending his fingers, but "he could still make a full fist." Rollins noted that there was a "palpable bony deformity" or "some displacement" of the formerly fractured metacarpal, but Rollins described Myers' condition as a "healed fracture" and a "completely healed fracture." Rollins noted "surgical option is not being entertained now" and "an attempt at surgical reconstruction may not be beneficial at this time." Rollins' opinion and advice to Myers was that "[h]e

has normal hand function and should resume the use of his hand." Rollins treatment notes are at Exhibit A, 266-67. In the consultation record Rollins would have returned to the medical department, Exhibit A, 265, Rollins wrote as an assessment "healed stable fracture" and as a plan "no surgery to be done."

Over the next few months Myers interacted several times with personnel in Somerset's medical department, including Delisma, about a number of other health issues but made no recorded complaint about his hand until June 1, 2020, at which time Myers complained to Kaufman about alleged numbness in his right hand and said he planned to sue "the Wellpath doctor." Exhibit A, 131-32. Kaufman noted that Myers' fourth finger did not extend fully, but there was no atrophy, and Myers had good and equal grip strength in all his fingers. Myers was transferred to S.C.I. Greene in July 2020, and then to S.C.I. Fayette in September 2020. Myers eventually was sent to Benner, where he complained of bilateral numbness in his hands that has been diagnosed as deQuervain's syndrome, something no one claims is related to Myers' punching the wall in November 2019.

Because medical matters not within the grasp of a lay factfinder require expert testimony, Myers' feeling as expressed in his complaint that he has a permanent injury to his right hand is not competent evidence of injury. Myers' personal feeling that this results from Delisma's treatment decisions (as opposed to, for instance, any numbness being caused by what later was diagnosed as deQuervain's syndrome) is not competent evidence of causation. Third, because some fractures are treated surgically while others are splinted and not treated surgically, Myers does not on this record have competent evidence that he ever had a serious medical need for anything beyond the emergency room treatment that he received. But Delisma makes a simple straightforward attack on the merits of Myers' *prima facie* case that does not rely on Myers' lack of expert evidence: he asserts that there is no evidence of deliberate indifference in the record. Delisma is correct.

No jury could find Delisma liable for deliberate indifference to Myers' serious medical needs unless there is evidence that Delisma knew and disregarded:

> an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer v. Brennan, 511 U.S. 825, 837 (1994).  The second prong of this test requires an actual, subjective appreciation of a substantial risk, not a "should have known," and that requires knowledge. Myers' complaint was enough to deserve further exploration, but after discovery there is no evidence in the record that anyone other than Myers heard Bittner's alleged statement that Myers was referred for surgery as soon as the swelling went down. There is nothing like that in Bittner's notes, which would have been the source

of information available to Delisma. Rollins' written description of the February 2020 consult also differs significantly from the account given by Myers: Rollins unequivocally ruled out surgery and described Myers as having normal hand function.

It would be highly irregular for an ER doctor to inform the medical director of a prison about surgical referrals by orally communicating such referral to the inmate, but even if a jury believed the account Myers gave in his complaint were truthful, Bittner's alleged referral of Myers "for surgery" was not available to Delisma. Between November 12, 2019 and January 22, 2020, not even Myers alleges that he told anyone except for the nurse making night medication rounds and one of the corrections officers that anything was wrong with his hand, and there is no other basis for a finding that Delisma knew that Myers needed further treatment.  Kaufman's notes from January 22, 2020, Exhibit A, 204, indicate that the result of Myers' x-ray was made known to Delisma, and Delisma responded by scheduling the consult with Rollins. This appears to have been an appropriate decision, and Rollins' report would lead to a conclusion that Myers suffered no injury, but even if Delisma had made an inappropriate medical decision, a wrong decision is not deliberate indifference.

 Deliberate indifference claims come in several broad categories, including officials (1) denying reasonable requests for medical treatment, (2) knowing of the need for medical care and intentionally refusing to provide it, (3) delaying necessary medical treatment for non-medical reasons, and (4) preventing an inmate from receiving recommended treatment for serious medical needs. *See* Pearson v. Prison Health Service, 850 F.3d 526, 538 (3d Cir.2017).  Myers received prompt emergency care, Delisma could have had no knowledge of any further need for care before January 22, 2020, and Delisma responded promptly to the x-ray of January 22, 2020, by scheduling a consult with Rollins. No jury could find him deliberately indifferent in any way.

Judgment is entered for defendant Delisma.

DATE:  June 10, 2022

Keith A. Pesto,
United States Magistrate Judge

Notice by ECF to counsel of record and by U.S. Mail to:

Christopher D. Myers NF-8707
S.C.I. Benner
301  Institution Drive
Bellefonte, PA 16823