IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER D. MYERS, : | |
|     Plaintiff : | |
|       v. : | Case No. 3:21-cv-69-KAP |
| KANSKY DELISMA, : | |
|     Defendant : | |

<u>Memorandum Order</u>

      After reviewing plaintiff Myers' opposition to defendant Delisma's motion for summary judgment, my conclusion remains the same: no reasonable jury applying the relevant law could return a verdict for Myers because there is no evidence of record that would permit a reasonable jury to find that Delisma was deliberately indifferent to Myers' serious medical needs. Judgment again will be entered for the defendant.

      Large swathes of facts are not in dispute, *see* defendant's statement of facts, ECF no. 24 and plaintiff's statement of facts, ECF no.30, and for the most part I will stand on my previous discussion. Where necessary I will refer to the relevant paragraphs in the parties' statements as "Delisma ¶¶ xx; Myers' ¶¶ xx," without reference to the underlying documents. To recapitulate the undisputed facts and to set out Myers' description of events where the facts are disputed, Myers, an inmate at S.C.I. Somerset, slipped in his cell in the RHU while shadow-boxing, hit the wall of his cell, and caused a comminuted fracture of the fourth metacarpal on Myers' right hand. In layman's terms Myers broke the bone below the knuckle on his right hand ring finger on November 10, 2019. Delisma ¶¶ 1-19; Myers ¶¶ 1-19.

      By November 2019, Myers was familiar to personnel in the medical department at Somerset and to Doctor Delisma because he had a chronic illness for which he was being regularly followed and for which he received medication every day. Myers had been prescribed a prosthetic tooth and also regularly received dental treatment. Myers was also seen several times for extraordinary occurrences, including in September 2019, when Myers was brought to medical after being in a gang-related altercation that resulted in injuries to Myers. There were also episodes of use of oleoresin capsicum spray on Myers that called for decontamination by medical personnel, including one on December 26, 2019. Myers also was a regular recipient of pain relievers: Myers "worked out" in his cell and sometimes visited medical for complaints of pain he believed were caused by his injuring himself while exercising. In October 2019, Delisma had seen Myers for one such complaint of a back injury. *Id.*

      Delisma sent Myers to the local emergency room on November 11, 2019, the day

1

Myers' reported the injury. The attending ER physician, Liana Bittner, M.D., splinted the finger. Bittner's report described the injury as a "comminuted displaced fracture of the midshaft of the fourth metacarpal with foreshortening and overriding of the bony fragments." The radiologist reviewing the x-rays taken at the time, Amjad Safvi, M.D., made the same diagnosis.

Bittner returned Myers for transport back to prison in what is described in writing as "stable and ambulatory condition" with four written instructions: to continue the splint until seen by David Girdany, an orthopedic surgeon in the borough of Somerset, "in the very near future;" to apply ice to the swelling for the next 24 hours; to take ibuprofen as needed for pain; and to use Bactrim for ten days for any skin infection. In the written discharge instructions there is no mention of surgery, a need for surgery, or a referral for surgery. Bittner did not define "in the very near future" or explain why Girdany was specifically named.

Delisma saw Myers on his return from the ER and placed him in the infirmary for monitoring. On November 12, 2019, Delisma asked Myers if there were any sign of infection (was his hand green) or he was in pain. Receiving negative answers, Delisma cleared Myers to go back to the RHU. Myers ¶18.

Myers states that thereafter he frequently inquired of the nurses who came to the RHU to distribute medicine when his referral to Girdany was going to happen. Myers states that the nurses told him they would speak with Delisma and that "instructions had been issued to Dr. Delisma to schedule a consultation with an orthopedic surgeon 'very soon'." Myers ¶18. There is no evidence in the record that any of Myers' questions were communicated to Delisma, or that any unnamed nurse knew of any instructions to Delisma, or that any such instructions existed. There is no evidence that the sick call process was unavailable and there is no claim that Myers attempted to use the sick call process.

Myers does not describe any significant pain or any other symptom in the month after his return from the ER. In Myers' complaint, he alleged that on December 19, 2019, he asked an unnamed nurse when his splint was going to be removed and was told it was safe to remove the splint if he were not in pain. Myers removed the splint on December 20, 2019, and according to his complaint immediately noticed a change in the appearance of his finger that he described as a half-inch displacement of the knuckle towards the wrist, a lump on the back of his right hand, and he could not fully extend his ring finger.

Myers did not bring this problem to Delisma's attention or to anyone else's attention at this time. He did not mention it when he was decontaminated after being sprayed with OC spray on December 26, 2019. He did not mention it when he was seen for a hunger strike by at least two different nurses (Fama and Baumgardner) on January

1 and 2, 2020. Myers implies very indirectly that his inaction was reasonable: according to Myers' complaint, in December 2019 a nurse named Casey told Myers the lump was probably just a hematoma and his hand would likely get better. This apparently allayed any concerns of Myers until approximately a month later, in mid-January 2020, when a corrections officer named Longsinger told Myers that Longsinger knew, because Longsinger had been involved in transporting Myers to the ER and had seen the x-ray, that Myer's finger had been broken in two and that the "lump" in his finger was related to the fracture.

Myers put in a slip for sick call about his hand on January 22, 2020. He was seen by Physician Assistant Ellis Kaufman on January 22, 2020 and had an x-ray at Somerset on January 22, 2020. The reviewing radiologist, Scott Logan, M.D., assessed the x-ray as showing a subacute to chronic partially healed fracture. On January 30, 2020, Delisma scheduled a consultation with the medical group Conemaugh Plastic Surgery for February 19, 2020. Delisma ¶¶ 20-25; Myers' ¶25.

On February 17, 2020, Myers signed up for sick call with a new complaint that he had numb and tingly sensations on the right side of his right hand. On February 19, 2020, Myers had the previously scheduled consultation with Paul Rollins, M.D., who noted that Myers complained of some pain and discomfort on the back of his right hand and that Myers said he had trouble flexing and extending his fingers, but "he could still make a full fist." Rollins noted that there was a "palpable bony deformity" or "some displacement" of the formerly fractured metacarpal. Rollins described Myers' condition as a "healed fracture" and a "completely healed fracture." Rollins noted in writing that "surgical option is not being entertained now" and "an attempt at surgical reconstruction may not be beneficial at this time." Rollins' written opinion and advice to Myers was that "[h]e has normal hand function and should resume the use of his hand." Rollins treatment notes are at Exhibit A, 266-67. In the consultation record Rollins would have returned to the medical department Rollins wrote as an assessment "healed stable fracture" and as a plan "no surgery to be done."

Myers states that during the consult Rollins also orally told him he would never have full strength in his hand again and he should have been seen by an orthopedic surgeon "shortly after the trauma" and had his broken bone reset with a surgical pin. Myers ¶28. Myers described this conversation with Rollins in more detail in his complaint. Neither Rollins nor Myers ever brought this oral assessment by Rollins to anyone's attention over the next few months. Myers interacted several times with personnel in Somerset's medical department, including with Delisma, about a number of other health issues. This included during decontamination on April 6, 2020, for another use of OC spray after Myers assaulted a corrections officer, and during another hunger strike from May 17 until May 22, 2020. Myers agrees with Delisma's statement of facts

that Myers was closely monitored during the hunger strike, including by Delisma, and made no complaint about his hand to anyone. Myers does not dispute that he made no complaints about his hand until June 1, 2020, at which time Myers complained to Kaufman about alleged numbness in his right hand. Delisma ¶¶ 30-59; Myers ¶¶ 30-59. Myers states that he did not complain of pain when Delisma saw him on May 26, 2020, because Delisma was only there to clear Myers to go back to the RHU after a hunger strike that Myers had been on, and to renew a prescription. Myers ¶60. Myers does not offer any explanation for not mentioning his hand during the other interactions with Delisma.

There is no dispute that Dr. Delisma and the medical staff provided prompt appropriate medical care to Myers on November 11, 2019. A jury could nevertheless find deliberate indifference by Delisma if it could find that Delisma knew of a serious medical need for follow-up care (surgery, according to Myers) and intentionally refused to provide it, or that Delisma prevented Myers from receiving recommended treatment (surgery, according to Myers) for a serious medical need. Pearson v. Prison Health Service, 850 F.3d 526, 538 (3d Cir.2017).

Myers' evidence for the foregoing is Myers' interpretation of Bittner's discharge instructions as mandating a more immediate (how much more immediate Myers does not say) follow-up consultation than the one with Rollins three months post-injury. *See* Myers ¶25:

> Plaintiff observes that the language of this referral makes it clear that the consultation was, in Liana Ed L. Bittner MD's opinion, to take place before Mr. Myers' 4th metacarpal began to heal/fuse, hence Liana Ed L. Bittner MD's use of words "very near future" in her referral.

Bittner's instructions are evidence of what Delisma knew, but Myers' interpretation of Bittner's notes is not. "Very near future" is not a timetable. Delisma saw Myers in person on his return from the ER and Myers himself does not claim to have complained about or had any symptoms calling for urgent attention. Unless the fact of a comminuted fracture itself mandates a specialist consultation and a specific timetable for that consultation that was known to Delisma, then Delisma's scheduling of Myers' consultation in February 2020 was either a decision by Delisma not inconsistent with Bittner's notes or, at worst, an incorrect decision that resulted either from Delisma's misinterpretation of Bittner's notes or Delisma's personal observations of Myers. An incorrect decision, even a negligent one, is not deliberate indifference. (There is a third possibility that neither side rules out, namely that the earliest any appointment could be scheduled was February 2020. If this were the case, then Delisma's actions could not have been the legal cause of any injury to Myers.)

There is a second gap in the evidence that relates to Myers' assumption that lack

of surgical treatment equals deliberate indifference. A consultation is a means to determine whether treatment is needed and if so what treatment, but it is not treatment in itself. The case for deliberate indifference requires that a jury be able to find not only that Delisma knew in November 2019 of a need for a more immediate consultation, but also that a consultation would have inevitably resulted in an order for immediate surgery. This is equivalent to showing that Delisma knew in November 2019 that Myers needed surgery. Myers attempts to close this gap by offering his recollection of the oral statements by Rollins to Myers that imply that a more immediate consultation would have resulted in surgery.

I leave aside the problem that Rule 56 requires that evidence be admissible, and that Myers offers a hearsay expert opinion from Rollins without a foundation that the hand Rollins examined in February 2020 was unaffected by any other impacts since November 2019. Even if Rollins testified without objection in a manner consistent with the statement that Myers recalls him making, the problem that cannot be disregarded is timing. The very reason for a consultation that some fractures require surgery while others are splinted and not treated surgically. Myers' account of Rollins' oral opinion in February 2020 about what a consultation would have resulted in if it had taken place "sooner" does not constitute evidence about what Delisma did know in November 2019. Deliberate indifference requires that Delisma had knowledge of a need, Farmer v. Brennan, 511 U.S. 825, 837 (1994), not just that he would have had or should have had such knowledge.

No jury could find that Delisma knowingly refused to provide needed treatment, delayed necessary treatment for a non-medical reason, prevented Myers from receiving treatment, or persisted in a course of treatment contraindicated by its clear ineffectiveness. Myers did not allege a claim of negligence, and he cannot present to a jury what would be an inadequate claim for negligence as a violation of the Eighth Amendment.

DATE: August 9, 2022

Keith A. Pesto,
United States Magistrate Judge

Notice by ECF to counsel of record and by U.S. Mail to:

Christopher D. Myers NF-8707
S.C.I. Benner
301 Institution Drive
Bellefonte, PA 16823